**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE OFFEREINS, an individual, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 24-cv-08032 |
| DISCOVER FINANCIAL SERVICES, | ) | |
| a Delaware corporation, | ) | Hon. Joan B. Gottschall |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS PLAINTIFF'S COMPLAINT</u>**

Diane Offereins, who voluntarily retired from Discover in June 2023 after 25 years as a top executive, has filed this action purporting to take issue with Discover meting out consequences after an investigation into the misclassification of certain credit cards.[1] Ms. Offereins admits that she knew about the credit card misclassification and that it went uncorrected for many years. In accordance with the express terms of her outstanding equity awards, she forfeited certain of those awards on account of the misclassification investigation.

Displeased with the outcome of the Company's investigation, Ms. Offereins alleges that Discover's actions were somehow discriminatory based on her gender or age or otherwise taken in bad faith. However, her Complaint does not contain any allegation of discriminatory animus and her allegations do not establish a plausible inference of discrimination. Indeed, Ms. Offereins's own pleading notes that Discover championed her for empowering women, and she does not—and cannot—allege that a similarly situated male was treated differently. Moreover, Ms. Offereins does not allege that she was treated differently because of her age. Simply put, Ms. Offereins does not state a single claim that is plausible on its face.

*First*, Ms. Offereins fails to state an Equal Pay Act ("EPA") claim (Count III) because she does not allege that Discover paid higher wages to male employees for similar work. Rather, she grounds her claim on allegations that she forfeited more equity than male executives, a novel theory that stretches the plain language of the EPA beyond its limits. Ms. Offereins's EPA claim also fails because she concedes that her alleged male comparators performed different work.

*Second*, Ms. Offereins fails to plead a plausible claim for gender discrimination in violation of Title VII (Count II) or the Illinois Human Rights Act ("IHRA") (Count V).

---

[1] The facts in this brief come from the Complaint and documents central thereto, which this Court may consider in deciding a Rule 12(b)(6) motion. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Discover assumes the truth of the allegations solely for purposes of the Motion.

Ms. Offereins does not plead any facts from which this Court could plausibly infer that her loss of equity was in any way tied to gender animus. Indeed, her gender discrimination claims are not plausible in light of her own pleading that just months before the decision she now claims was somehow motivated by gender animus, Discover lauded her "accomplishments as a trailblazing woman in finance," having "long advocated for the advancement of women, both within Discover, and externally." Compl. ¶ 35. Her gender discrimination claims also fail because she does not allege that a similarly situated male was treated more favorably. Indeed, she acknowledges that she was differently situated from other executives in that she had (i) held a different role with different responsibilities than the alleged male comparators and (ii) unlike her purported comparators, voluntarily retired at the time Discover determined consequences related to the card classification issue.

*Third*, Ms. Offereins fails to state a claim for age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") (Count IV) or the IHRA (Count VI). Her attempt to use retirement status as a proxy for age fails under U.S. Supreme Court precedent. She also alleges no facts that plausibly link her forfeiture of equity to any age-motivated animus.

*Fourth*, Ms. Offereins's claim for breach of the implied covenant of good faith and fair dealing (Count I) fails because Discover's executive compensation plan documents explicitly (i) authorize Discover to take the very action it did in forfeiting Ms. Offereins's unvested equity and (ii) insulate from liability decisions made through the exercise of authority under the plan documents or the administration of the plan unless such decisions result from willful misconduct.

Discover respectfully requests that this Court grant its motion to dismiss the Complaint.

## FACTUAL BACKGROUND

A.      **Ms. Offereins Voluntarily Retired in June 2023, and Discover Touted
           Ms. Offereins For Empowering the Advancement of Women in Finance.**

During her 25-year tenure at Discover, Ms. Offereins was part of the "top echelon of executive management."  Compl. ¶ 24.  From 1998 to 2009, Ms. Offereins served as the Company's Chief Information Officer.  *Id.* ¶¶ 23-24.  From 2009 to June 2023, she led Discover's global payments network as Executive Vice President and President of Payment Services, overseeing the infrastructure for using Discover credit cards.  *Id.* ¶¶ 26, 53.

While "Ms. Offereins intended to retire from Discover in 2018," she "agreed to stay on . . . to support the transition to the new CEO," Roger Hochschild.  *Id.* ¶ 32.  She then elected to retire at the end of June 2023.  *Id.* ¶ 33.

While at Discover, Ms. Offereins received "numerous accolades" for her role as an influential woman in the finance industry.  *Id.* ¶ 31.  In March 2023, Discover issued a press release announcing Ms. Offereins's retirement.  *Id.* ¶ 33.  Discover lauded Ms. Offereins's "accomplishments as a trailblazing woman in finance," emphasizing that "she was named 'one of the Most Powerful Women in Finance by American Banker for . . . 15 consecutive years'" while at Discover.  *Id.* ¶ 35.  Discover also "noted that Ms. Offereins 'has long advocated for the advancement of women, both within Discover, and externally where she has served as a member and Chair of the Chicago Network, an organization committed to empowering women.'"  *Id.*

B.      **Discover Granted Ms. Offereins Equity Awards, Which Would Not Convert
           to Shares of Discover Stock Until Discover Completed a Risk Review.**

During her employment, Discover granted Ms. Offereins stock awards (the "Awards"), in accordance with Discover's Amended and Restated 2014 Omnibus Incentive Plan (the "Plan").

*Id.* ¶¶ 37, 40; *see also* Ex. A.[2]  The Plan is administered by the Compensation and Leadership

Development Committee of the Board of Directors of Discover (the "Committee"), Ex. A

§§ 2, 5(a); *see also* Compl. ¶ 38, and states:

- The Committee "shall have full power and authority to make all determinations under the Plan" and "to construe and interpret the Plan."  Ex. A § 5(a), (c).

- "All of the Committee's determinations in carrying out, administering, construing and interpreting the Plan shall be made or taken in its sole discretion and shall be final, binding and conclusive for all purposes and upon all persons."  *Id.* § 5(d).

- "[N]o member of the Committee or any Administrator shall be liable for anything whatsoever in connection with the exercise of authority under the Plan or the administration of the Plan except such person's own willful misconduct."  *Id.* § 5(e).

- "[T]he Committee and an Administrator shall be entitled to rely upon information and advice furnished by the Company's officers, the Company's accountants, the Company's counsel and any other party the Committee or the Administrator deems necessary, and no member of the Committee or any Administrator shall be liable for any action taken or not taken in good faith reliance upon any such advice."  *Id.*

Ms. Offereins received Awards pursuant to the Plan that included Restricted Stock Units

("RSUs") and Performance Stock Units ("PSUs").  Such Awards include the right to receive

shares in Discover "subject to certain terms and conditions, upon the expiration of a restriction or

vesting period."  Compl. ¶ 38.  For each Award of RSUs or PSUs, Ms. Offereins received an

Award Certificate "describ[ing] the terms and conditions under which [she was] being granted"

the Award under the Plan.  Compl. Ex. C at 2; Compl. Ex. D at 2; *see also* Compl. ¶ 40.

Ms. Offereins's Awards were expressly subject to a risk review by Discover.  Each of

Ms. Offereins's Award Certificates provides that no RSU or PSU "will convert to Shares until"

Discover's "Chief Human Resources & Administrative Officer receives confirmation from the

[Company's] Chief Risk Officer, or their delegate, to determine whether [she] engaged in any

---

[2] References to "Ex. A" to this Motion are to the Plan, which is quoted in and is central to the Complaint. *See* Compl. ¶¶ 37-39; *see also Brownmark Films*, 682 F.3d at 690.

willful or reckless violation of the Company's risk policies." Compl. Ex. C § 10(c); Compl. Ex. D § 8(c); *see also* Compl. ¶¶ 45-46. If this assessment reveals "any such violation or breach, then the Company may determine that all or a portion of [the RSUs or PSUs] will be forfeited." Compl. Ex. C § 10(c); Compl. Ex. D § 8(c); *see also* Compl. ¶¶ 45-46.

In addition, each Award Certificate provides that "[i]n the event that the Company has either commenced an investigation of a matter that [Ms. Offereins] oversaw or w[as] involved in or has evidence that may require investigation of a matter that [she] oversaw or w[as] involved in" regarding, *inter alia*, a serious violation of Company policy, it may "freeze" Ms. Offereins's account "until such time as the Company reasonably believes the matter to be resolved." Compl. Ex. C § 10(d); Compl. Ex. D § 8(d); Compl. ¶ 50.

### C. Discover Investigated a Card Classification Matter, and Ms. Offereins was Interviewed in Connection with the Review.

In June 2023, "Discover's outside counsel contacted Ms. Offereins about setting up an interview to discuss an internal review that had begun in the first quarter of 2023." Compl. ¶ 51. Outside counsel was reviewing the "potential misclassification of certain non-commercial credit cards into a commercial tier that charged merchants a higher interchange fee on transactions." *Id.* ¶¶ 3, 59. "[A] few days after her formal retirement from the Company," Discover's outside counsel interviewed Ms. Offereins. *Id.* ¶ 51. Ms. Offereins was part of the top echelon of executive management at Discover when the card classification issue began, and she was aware of it for many years. *Id.* ¶¶ 23-24, 55.

On July 19, 2023, Discover "publicly announced that it was discussing the card misclassification issue with its regulators." *Id.* ¶ 59. Ms. Offereins alleges, "[o]n information and belief," that "Discover corrected the card misclassification issue by the fourth quarter of 2023"—*i.e.*, after she voluntarily retired from the Company. *Id.* ¶ 62.

**D.**   **Discover Cancelled Ms. Offereins's Unvested Equity Awards Based on Its Investigation into the Card Misclassification Issue.**

On January 2, 2024, Discover informed Ms. Offereins that the Company was conducting "an ongoing risk review . . . related to an investigation of the card misclassification matter." Compl. Ex. E.  Discover further informed Ms. Offereins that, in accordance with the Plan, her Awards would not convert to shares until the Company completed its risk review process.  *Id.*  Because the Company had not yet made a determination related to her Awards, her account was on hold pending the Company's completion of its risk review.  *Id.*

On January 31, 2024, the Chairman of Discover's Board of Directors informed Ms. Offereins that the Company had completed its risk review related to the card misclassification matter.  Compl. Ex. F at 1.  Through this risk review, the Company's Chief Risk Officer "concluded that [Ms. Offereins] engaged in willful or reckless violation of the Company's risk policies."  *Id.*  "In consideration of this conclusion, the Board of Directors" determined that 100% of each of Ms. Offereins's outstanding Awards—*i.e.*, the portion of her Awards that had not yet vested—had been forfeited.  *Id.*

Ms. Offereins was not the only executive who suffered consequences following the outside law firm's investigation and the Company's risk review.  *See* Compl. ¶¶ 83, 87, 89. Although Ms. Offereins had voluntarily retired while the investigation was ongoing, she alleges that the Company terminated at least one executive in connection with the card misclassification—its CEO and President, Roger Hochschild:  "On information and belief, the Company asked Mr. Hochschild to resign or face termination because of a series of compliance and legal issues, including [the card classification matter]."  *Id.* ¶ 81.  The Company also cancelled equity awards granted to Mr. Hochschild during the fiscal year ending December 31, 2023.  *Id.* ¶ 82.

Dan Capozzi, Discover's Executive Vice President and President of U.S. Cards since 2020, also suffered consequences. *Id.* ¶¶ 53, 87. Ms. Offereins and Mr. Capozzi were responsible for different business segments at the Company. *Id.* ¶ 53. Mr. Capozzi received a "$1,350,000 reduction" in his 2023 cash bonus as a "consequence for his involvement in the [card classification] investigation." *Id.* ¶ 87.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter," which, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2). "[A] complaint must plead more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and will not suffice if it tenders only "naked assertions devoid of further factual enhancement." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (citations omitted). When considering the viability of a Rule 12(b)(6) challenge, the Court "may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Id.* (citations omitted).

## ARGUMENT

### I.     Ms. Offereins Fails to State a Claim for Violation of the EPA (Count III).

The EPA precludes an employer from paying wages to members of one sex "at a rate less than the rate at which [it] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). To state an EPA claim, a plaintiff "must plausibly allege: '(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions.'" *Jirek v. AstraZeneca Pharmas. LP*, 2023 WL

415547, at *3 (N.D. Ill. Jan. 25, 2023) (quoting *Jaburek v. Foxx*, 813 F.3d 626, 632 (7th Cir. 2016)). Ms. Offereins has failed to plead these elements.

*First*, Ms. Offereins does not allege that Discover paid higher wages to male employees performing similar work. Rather, she grounds her purported EPA claim in allegations that she forfeited more equity than male executives. Compl. ¶¶ 89, 117. This novel theory seeks to stretch the fundamental precept of the EPA—equal pay for equal work—beyond its breaking point. *See* 29 U.S.C. § 206(d)(1); *see also Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (Congress intended the EPA to remedy a wage structure based on the "outmoded belief that a man . . . should be paid more than a woman even though his duties are the same," and, therefore, the EPA "require[s] that equal work will be rewarded by equal wages" (citations omitted)). Indeed, the Complaint makes clear that Discover forfeited Ms. Offereins's equity not based on the type of work she was to perform, but instead based on the outcome of the Company's risk review related to the card misclassification. Compl. ¶¶ 3, 66; Compl. Ex. F at 1.

*Second*, Ms. Offereins's EPA claim fails for the additional independent reason that she does not assert that she and her alleged male comparators—Mr. Hochschild and Mr. Capozzi—performed "equal work" under "similar working conditions." While a plaintiff need not plead that she and her comparators held identical jobs, she must plead some facts to suggest that they were "substantially equal." 29 C.F.R. § 1620.13(a); *see also Parks v. Speedy Title & App. Rev. Servs.*, 318 F. Supp. 3d 1053, 1070 (N.D. Ill. 2018).

In fact, rather than alleging that she performed substantially equal work as any male comparator, Ms. Offereins makes a concerted effort to distinguish her responsibilities and scope of work from those of Mr. Hochschild and Mr. Capozzi. *See Williams v. Illinois*, 2022 WL 952745, at *4 (N.D. Ill. Mar. 30, 2022) (dismissing EPA claim when plaintiff "pleaded a fact [in

support of another claim] that prevent[ed] her from prevailing on the [EPA] claim"). Unlike

Mr. Hochschild, the former "CEO and President of the Company, a member of the Board, and a

director and executive of Discover Bank," Compl. ¶ 81, the Complaint alleges that Ms. Offereins

led Discover's payments network—*i.e.*, only one "part of Discover's business"—and was not

responsible for overseeing its banking division, *id.* ¶ 53. And the Complaint alleges that as

President of U.S. Cards, Mr. Capozzi was responsible for credit card issuance, a responsibility

which "was clearly beyond the scope of [Ms. Offereins's] duties on the payments network side."

*Id.* ¶ 54.

In sum, because Ms. Offereins fails to allege that she was paid less for equal work under

similar working conditions, her EPA claim should be dismissed as a matter of law.

## II. Ms. Offereins Fails to State a Claim for Gender Discrimination (Counts II and V).[3]

A plaintiff can plead a Title VII gender discrimination claim either directly—by alleging

that "an adverse employment action was motivated by discriminatory animus"—or indirectly—

by alleging that she "belongs to a protected class, her job performance met legitimate

expectations, she suffered an adverse employment action, and a similarly situated individual not

in the protected class was treated more favorably." *Parker v. Ill. Hum. Rts. Comm.*, 2013 WL

5799125, at *3 (N.D. Ill. Oct. 25, 2013) (Gottschall, J.). In either case, to survive a

Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is

plausible on its face," and which "raise a right to relief above the speculative level." *Twombly*,

550 U.S. at 555, 570; *see also Parker*, 2013 WL 5799125 at *4. Here, the Complaint fails to

---

[3] Courts apply the same analytical framework when assessing claims under the federal anti-discrimination statutes and under the IHRA. *Zaderaka v. Ill. Hum. Rts. Comm'n*, 545 N.E.2d 684, 687 (Ill. 1989) ("In analyzing employment discrimination actions brought under the [IHRA], the Commission and the Illinois appellate court have adopted the analytical framework set forth in United States Supreme Court decisions addressing claims brought under Title VII . . . and the [ADEA] . . . ."); *Ross v. Univ. of Chi.*, 2018 WL 6448464, at *3 n.2 (N.D. Ill. Dec. 10, 2018).

raise a plausible inference of gender discrimination under either method. To the contrary, Ms. Offereins "pleads facts which show [s]he has no claim"—*i.e.*, "[s]he has pled [her]self out of court." *See McCready v. eBay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Ms. Offereins's Complaint does not include any allegations "that plausibly suggest that [the forfeiture of her unvested equity] was based on her . . . sex." *Parker*, 2013 WL 5799125, at *4. It is not enough to allege that she is a woman and forfeited some of her equity Awards. Indeed, "simply pleading that a plaintiff belongs to a particular protected group and suffered mistreatment is not enough. . . . Some causal relationship beyond 'mere labels and conclusions' must be shown." *Mahran v. Cnty. of Cook*, 2023 WL 8004280, at *4 (N.D. Ill. Nov. 17, 2023) (quoting *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016)).

In *Parker,* where the plaintiff arguably included more allegations of purported gender discrimination than Ms. Offereins does here, this Court found that the plaintiff's allegations were "insufficient to support an inference that [her] termination resulted from race or sex discrimination." 2013 WL 5799125, at *4. In addition, the plaintiff in *Parker* alleged that a purported wrongdoer was "inappropriately biased in *favor* of an African-American female claimant," which was inconsistent with the plaintiff's claim that the wrongdoer was motivated by discrimination. *Id.*

Likewise here, Ms. Offereins "nudges" her gender discrimination claim "outside the realm of plausibility" by alleging facts that are *inconsistent with any inference* that Discover was motivated by discriminatory animus. *See Redmon v. YMCA*, 417 F. Supp. 3d 99, 104 (D.D.C. 2019). Ms. Offereins alleges that just months before she was interviewed by outside counsel investigating the card classification issue, Discover issued a press release championing her role as a leading woman in finance who "has long advocated for the advancement of women, both

within Discover, and externally." Compl. ¶ 35. Such a pleading is wholly inconsistent with any inference that Discover was somehow motivated by discriminatory animus with respect to its decision to forfeit Ms. Offereins's equity. Ms. Offereins also pleads herself out of court in that the portion of the Complaint that addresses the cancellation of her equity Awards alleges other, nondiscriminatory reasons having nothing to do with gender, including: "she was the only senior executive at the Company with sufficient unvested equity that could be cancelled by the Company under the Risk Review provision of the Award Certificates," *id.* ¶ 70; and "she had recently retired and was in the best position to have a large amount unvested," *id.* ¶ 72.

Nor does Ms. Offereins put Discover on notice of any alleged similarly situated male coworker to support an inference of discrimination. To the contrary, Ms. Offereins expressly alleges that her role at Discover was different from that of the two male executives—former CEO Roger Hochschild and Executive Vice President and President of U.S. Cards Dan Capozzi—who likewise suffered consequences following the Company's Risk Review. *See id.* ¶ 81 (noting that Mr. Hochschild was forced to resign as "CEO and President of the Company, a member of the Board, and a director and executive of Discover Bank, effective August 14, 2023"), ¶ 53 ("Discover is both a bank that issues payment cards and a network that provides the infrastructure to use those cards. In her role as President of Payment Services, Ms. Offereins oversaw the latter part of Discover's business, while another role, the Executive Vice President and President of U.S. Cards, oversaw the issuance of the cards themselves. Since 2020, the President of U.S. Cards at Discover has been Dan Capozzi.").

Ms. Offereins also negates any possibility of alleging a presumption through a similarly situated coworker by her concession that, at the time that the Company meted out consequences related to the card classification, she was the *only* impacted executive who had voluntarily

retired. *Id.* ¶¶ 70-72, 74. As such, at the time of the alleged adverse action, she was not similarly situated to any of her purported male comparators. *See Jaeger v. N. Babylon Union Free Sch. Dist.*, 191 F. Supp. 3d 215, 230 (E.D.N.Y. 2016) (dismissing gender discrimination claim when plaintiff, by his own allegations, admitted he and alleged comparator "were *not* similarly situated within the District, because all of the challenged employment actions occurred after [comparator] was promoted to a supervisory position").

In sum, because Ms. Offereins has failed to plead a gender discrimination claim that is plausible and, in fact, has pleaded facts that fatally undermine the plausibility of her own claim, her gender discrimination claims under Title VII and the IHRA should be dismissed.

**III.     Ms. Offereins Fails to State a Claim for Age Discrimination (Counts IV and VI).**

Ms. Offereins's age discrimination claim fails as a matter of law because, contrary to her suggestion, *see* Compl. ¶ 128, retirement status is not a proxy for age under the ADEA or IHRA. Under the ADEA, it is unlawful for an employer to "discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a). As the Supreme Court held in *Hazen Paper Co. v. Biggins*, "[w]hen the employer's decision *is* wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes [that the ADEA was enacted to redress] disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." 507 U.S. 604, 611 (1993); *see also David v. Bd. of Tr. of Cmty. Coll.*, 846 F.3d 216, 229 (7th Cir. 2017) (declining to "equate retirement eligibility with age").

Here, while retirement status—like pension status—may be correlated with age in certain circumstances, Ms. Offereins does not allege that her retirement from Discover was in any way tied to her age. *See Behnia v. Shapiro*, 961 F. Supp. 1234, 1240 (N.D. Ill. 1997) (dismissing ADEA claim where "allegations fail[ed] to show that younger persons were treated more favorably than" plaintiff). Likewise, Ms. Offereins's conclusory allegation that she is "66 years

old and is retired," Compl. ¶¶ 125, 142, and Discover "discriminated against [her] because of [her] age," *id.* ¶ 143, is insufficient to state an ADEA or IHRA claim. *See Abubakar v. Walmart, Inc.*, 2022 WL 14632902, at *4 (N.D. Ill. Oct. 25, 2022) (dismissing ADEA claim when "the only factual detail[]" plaintiff provided to support the claim was her own age). The Complaint is entirely devoid of any facts that would suggest—let alone make it plausible to conclude—that Discover's decision to forfeit her equity was in any way tied to her age. *See Ross*, 2018 WL 6448464, at *3 (dismissing ADEA and IHRA age discrimination claim when plaintiff failed to allege any causal connection between his age and adverse employment action); *Etheridge v. Hudson Grp. Retail, LLC*, 2022 WL 375556, at *10 (N.D. Ill. Feb. 8, 2022). Instead, as with the gender discrimination claim, Ms. Offereins pleads a number of other, nondiscriminatory reasons for her forfeiture of equity. *See supra* at 11 (citing Compl. ¶¶ 70, 72).

For these reasons, the age discrimination claims should be dismissed as a matter of law.

## IV.     Ms. Offereins Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I).

"[I]mplying obligations based on the covenant of good faith and fair dealing is a cautious enterprise."[4] *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cell. Sys. Co.*, 708 A.2d 989, 992 (Del. 1998). The doctrine "is only rarely invoked successfully." *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009). A plaintiff must "allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff." *Id.* (citation omitted). "General allegations of bad faith conduct are not sufficient."

---

[4] The Plan and Award Certificates are governed by Delaware law. *See* Ex. A § 16(d); Compl. Ex. C § 24; Compl. Ex. D § 22. Should the Court determine that Illinois law governs the implied covenant claim, then it fails as a matter of law inasmuch as "Illinois has only recognized an independent action for breach of [the] implied covenant of good faith and fair dealing in the 'narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder.'" *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 782 (N.D. Ill. 2018) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002)).

*Id.* Nor can a plaintiff "base a claim for breach of the implied covenant on conduct authorized by the agreement." *Nemec v. Shrader*, 991 A.2d 1120, 1125-26 (Del. 2010).

Ms. Offereins fails to plead an implied covenant claim because the Plan and Award Certificates—by their express terms—specifically authorize the Company to take the very action it did here and expressly provide that decisionmakers are not to be held liable for exercising authority under the Plan unless they engage "[in] willful misconduct." Ex. A § 5(e).

This case is analogous to *Raquet v. Allstate Corporation*, in which a court in this District held that a plaintiff failed to plead a breach of implied covenant claim under Delaware law. 348 F. Supp. 3d 775, 783 (N.D. Ill. 2018). The plaintiff there asserted that Allstate breached an implied covenant because it cancelled her equity awards after she retired and took a position with a competitor. *Id.* at 780, 782. The plaintiff failed to state a claim because Allstate's equity incentive plan "by its express terms provide[d] [it] with the authority to determine the terms and conditions of any awards issued pursuant to the Plan" and "limit[ed] [Allstate's] liability to decisions that are not made in good faith." *Id.* at 783. Because the plan "already contain[ed] an express contractual duty to act in good faith," the implied covenant claim was deficient. *Id.*

Ms. Offereins's claim is likewise deficient. She alleges that Discover violated the implied covenant by forfeiting her equity following the Chief Risk Officer's determination that she engaged in "willful or reckless violations of the Company's risk policies." Compl. ¶ 101. However, the Award Certificates state that Ms. Offereins's equity will not convert to shares until the Chief Risk Officer confirms that she did not engage "in any willful or reckless violation of the Company's risk policies." Compl. Ex. C § 10(c); Comp. Ex. D § 8(c). If there is "any such violation or breach, then the Company may determine that all or a portion of [the RSUs or PSUs] will be forfeited." Compl. Ex. C § 10(c); Compl. Ex. D § 8(c). The Plan provides that the

14

Committee "shall have full power and authority to make all determinations under the Plan . . . including without limitation . . . to establish the terms and conditions of each Award, including, without limitation, those related to vesting, cancellation, payment and exercisability." Ex. A § 5(a). Moreover, the Plan provides that "no member of the Committee or any Administrator shall be liable for anything whatsoever in connection with the exercise of authority under the Plan or the administration of the Plan except such person's own willful misconduct." *Id.* § 5(e). Accordingly, Ms. Offereins's implied covenant claim fails because "the subject at issue is expressly covered by the contract." *See Raquet*, 348 F. Supp. 3d at 782-83 (quoting *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 146 (Del. Ch. 2009)).

The implied covenant claim also fails because, in participating in the Plan, Ms. Offereins agreed that the Committee's "determinations in carrying out, administering, construing and interpreting the Plan shall be made or taken in its sole discretion and shall be final, binding and conclusive for all purposes and upon all persons." Ex. A § 5(d). Ms. Offereins does not state an implied covenant claim merely by expressing her disagreement with the outcome of those determinations. Indeed, the Plan states explicitly that the Committee's determinations "need not be uniform and may be made by it selectively among persons who receive, or are eligible to receive, Awards under the Plan (whether or not such persons are similarly situated)." *Id.* Ms. Offereins cannot use the implied covenant to imply terms that modify or negate the parties' contract. *See Nemec*, 991 A.2d at 1127 (affirming dismissal of implied covenant claim).

## **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: November 18, 2024            Respectfully submitted,

By: */s/ Evan D. Parness*
    C. William Phillips*
    Evan D. Parness*
    Catherine M. Carulas*
    Covington & Burling LLP
    The New York Times Building
    620 Eighth Avenue
    New York, NY 10018
    (212) 841-1000
    cphillips@cov.com
    eparness@cov.com
    ccarulas@cov.com

    Michael J. Gray
    Efrat R. Schulman
    Jones Day LLP
    110 North Wacker Drive
    Suite 4800
    Chicago, Illinois 60606
    (312) 782-3939
    mjgray@jonesday.com
    eschulman@jonesday.com

    *Counsel for Defendant Discover Financial Services*

    *admitted pro hac vice*

16

**CERTIFICATE OF SERVICE**

I hereby certify that, on November 18, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which served the foregoing on counsel of record.


*/s/ Evan D. Parness*