IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Diane Offereins, | ) |
|             Plaintiff, | ) |
| v. | ) Case No. 24-CV-8032 |
| | ) Honorable Joan B. Gottschall |
| Discover Financial Services, | ) |
|             Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Discover Financial Services ("Discover") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff Diane Offereins' six-count complaint for failure to state a claim upon which relief can be granted. For the reasons discussed herein, the motion is denied.

**I. Rule 12(b)(6) Standard**

Discover's Rule 12(b)(6) motion tests the complaint's sufficiency under federal pleading standards, not the merits of the case. *See Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (citations omitted). Rule 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

On a Rule 12(b)(6) motion, the court must "accept all well-pleaded facts from the [complaint] as true and view them in the light most favorable to the plaintiff." *Demkovich v. St. Andrew the Apostle Parish, Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021) (*en banc*) (citing *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021)). This principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## II. The Complaint

The court recites the complaint's allegations in accordance with the Rule 12(b)(6) standard—without vouching for the veracity of the complaint's allegations. Offereins, a woman, began her career with Discover in 1998 as its Chief Information Officer and served as the head of Discover's Global Payments Network from 2009 until her retirement in 2023. *See* Compl. ¶¶ 23–29, Dkt. No. 1. A trade publication, *American Banker*, named Offereins one of the most powerful women in finance in each of those fifteen years. Compl. ¶ 35. When she announced her retirement in March 2023, Discover issued a press release applauding her many accomplishments, stating that she "helped lead Discover's transition to an independent, publicly traded company in 2007 and its acquisition of PULSE and Diners Club International." Compl. ¶ 33 (quoting press release; no citation provided). Discover's payments business also created an annual award given to its partner of the year and named the award in Offereins' honor. Compl. ¶ 36.

### A. Discover's Incentive Compensation Plan

This litigation concerns certain incentives under Discover's Amended and Restated 2014 Omnibus Incentive Plan ("the plan") administered by the Compensation and Leadership Committee of Discover's board of directors ("the committee"). *See* Compl. ¶¶ 37–38. Like other Discover executives, approximately sixty percent of Offereins' compensation came in the form of stock incentives under the plan. *See* Compl. ¶ 80.

The plan authorized the committee, in its sole discretion, to select employees for awards for Performance Stock Units (PSUs) and Restricted Stock Units (RSUs). Compl. ¶ 38. An RSU gives the employee the right, under specified conditions, to receive a specified number of shares of Discover's common stock. Compl. ¶¶ 38–39. PSUs are a subspecies of RSU based on a multiplier tied to Discover's performance on specified benchmarks. *See* Compl. ¶ 39.

The committee awarded Offereins RSUs and PSUs in 2021, 2022, and 2023. *See* Compl. ¶¶ 40–44. The certificates accompanying these RSUs and PSUs included, among other clauses, a "Risk Review" provision. *See* Compl. ¶¶ 45–47. According to the language of the Risk Review provision of the Award Certificates, the Company has two levels of discretion in deciding to cancel equity awards. "First, the Chief Risk Officer must 'determine whether [the employee] engaged in any willful or reckless violation of the Company's risk policies.' After that determination is made, 'then the Company *may* determine that all or a portion of [the employee's RSUs/PSUs] will be forfeited.'" Compl. ¶ 47 (alterations and emphasis in the complaint) (quoting language and alleging that all certificates contained materially similar language).

**B. Credit Card Misclassification Investigation and Cancellation of Incentive Compensation**

During the first quarter of 2023, Discover launched an investigation, dubbed "Project Simple," into misclassification of certain credit cards issued to individuals as commercial cards. *See* Compl. ¶ 51–52. Merchants paid outsized fees for the misclassified cards. Compl. ¶ 52. Discover received "substantial external pressure" regarding the misclassification issue. *Id*. Offereins did not oversee the portion of Discover's business that issued the misclassified credit cards; she was responsible for the portion of Discover's business that processed payments. Compl. ¶ 53. The misclassification "was well-known to Discover's senior management for many years," and although Offereins "made proactive efforts to address the [misclassification] issue," doing so "was clearly beyond the scope of her duties on the payments network side, as it was Discover's card issuance business that made decisions on how to categorize newly-issued cards." Compl. ¶ 54–55.

Offereins "cooperated fully" with the investigation. Compl. ¶ 61. Within a month after she retired, Offereins sat for a three-hour interview with Discover's outside counsel on July 9, 2023. Compl. ¶ 51. Offereins heard nothing further from Discover about the interview, the investigation's outcome, or the impact it would have on her compensation. *See* Compl. ¶ 61.

3

On January 2, 2024, one day before her first set of RSUs and PSUs was scheduled to vest, Offereins received a letter from Discover informing her that an investigative hold had been placed on all of her unvested RSUs and PSUs. *See* Compl. ¶¶ 50, 63–67. The letter referred to the ongoing investigation of the misclassification issue and invoked the Risk Review provision. Compl. ¶ 64. Offereins heard nothing more about the review from Discover until she received a letter dated January 31, 2024. Compl. ¶¶ 66–67. The letter stated that all of Offereins' outstanding awards were forfeited because "A risk review was conducted in connection with the Company's card misclassification matter, and the Chief Risk Officer concluded that [Offereins] engaged in willful or reckless violation of the Company's risk policies." Compl. ¶¶ 66.

"Discover provided no evidence or explanation to support the Chief Risk Officer's determination that Ms. Offereins engaged in any 'willful or reckless violation of the Company's risk policies.' Nor did the Company explain [another committee]'s subsequent decision to cease all of Ms. Offereins' unvested equity." Compl. ¶ 67; *see also* Compl. ¶¶ 68–69. Offereins alleges that Discover "perverted the risk review process" because she "was an easy target for the risk review: she had recently retired and could not quit in protest or otherwise fight back against a baseless determination that she had acted willfully or recklessly." Compl. ¶¶ 71, 76; *see* Compl. ¶¶ 70–76. She estimates that, in all, Discover effectively deprived her of compensation worth more than $7 million. *See* Compl. ¶¶ 77–79; Resp. to Mot. to Dismiss 1, Dkt. No. 30 (estimating current value as more than $8 million).

**C. Differential Discipline and Claims for Relief**

The complaint identifies four male executives, all younger than Offereins, whom Discover allegedly treated more favorably, despite their greater responsibility for the credit card misclassification at the heart of Project Simple. *See* Compl. ¶¶ 81–89. First, Discover's board forced its then-Chief Executive Officer (CEO) Roger Hochschild to resign in August 2023. *See* Compl. ¶¶ 81. But Discover denied Hochschild only one year of incentive compensation and employed him until the end of 2023 as an advisor to the chair of its board. *See* Compl. ¶¶ 81–82

4

(certain allegations made on information and belief). The second younger male executive is Dan Capozzi, who served as Executive President for U.S. Cards beginning in 2020. Compl. ¶ 53. In that role, Capozzi and his predecessor oversaw the issuance of U.S. credit cards and, according to the complaint, bore responsibility for misclassifying cards. *See* Compl. ¶¶ 53–54. Capozzi "did not lose any equity awards as a result of the Project Simple investigation, based on a review of Discover's most recent comprehensive proxy filing." Compl. ¶¶ 85. Discover disciplined Capozzi by reducing his $1.5 million cash bonus in 2023 to $150,000. Compl. ¶ 87.

In addition, Offereins pleads as follows:

> 88. Mr. Hochschild and Mr. Capozzi are far from alone. As mentioned previously, the Company asked Mr. Eichfeld, the Chief Human Resources Officer, to leave within the last year. Mr. Eichfeld was given a severance package that allowed him to leave with all of his equity and an additional two years of pay. And Carlos Minetti, the President of Discover's Consumer Banking division until 2023, was given the same exit package as Mr. Eichfeld, despite a long-running government investigation into Discover's student loan business (overseen by Mr. Minetti).
>
> 89. It is no coincidence that Ms. Offereins—on information and belief both the only woman and only retired executive committee member to lose equity as a result of Project Simple—lost by far the largest percentage of her equity of any adversely affected employee. There is no non-discriminatory explanation for Ms. Offereins experiencing a larger proportional cancellation of her equity compensation than Mr. Hochschild and Mr. Capozzi.

Compl. ¶¶ 88–89.

Offereins, who was sixty-six years old when she filed her complaint, brings claims of age and gender discrimination under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Age Discrimination in Employment Act of 1976, as amended ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206; and the Illinois Human Rights Act, ("IHRA"),775 Ill. Comp. Stat. 5/101 *et seq.* Count I of the complaint asserts a breach of contract claim. Specifically, Offereins pleads that Discover breached the implied covenant of good faith and fair dealing when it denied her unvested incentives and bonuses. *See* Compl. ¶¶ 90–102.

5

### III. Analysis

Discover makes four arguments for dismissal. *See* Mem. Supp. Mot. to Dismiss 1–2, Dkt. No. 22. Discover first contends that the complaint fails to state a plausible claim of sex discrimination under Title VII and the IHRA because Offereins does not plausibly allege that "her loss of equity was in any way tied to gender animus." *Id.* at 2. Discover advances an analogous argument concerning Offereins' claim of age discrimination. *See id.* Second, Discover contends that Supreme Court precedent forecloses Offereins' attempt to use retirement eligibility as a proxy for age discrimination in violation of the ADEA. *See id.* Third, Discover maintains that the EPA guarantee of "equal pay for equal work" does not encompass Offereins' claim of discrimination in awarding stock incentive compensation. *See id*. And fourth, Discover seeks dismissal of Offereins' breach of contract claim because the RSU and PSU certificates in question reserved to Discover sole discretion to determine whether to award RSUs and PSUs. *Id.* at 4. The court considers each argument in turn.

### A. Sex Discrimination Claims

Under Title VII of the Civil Rights Act of 1964, an employer may not "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA employs similar language to prohibit an employer from discriminating against an employee or job applicant "because of [the] individual's age." 29 U.S.C. § 623(a)(1). Stated plainly, these statutes target "practices that 'treat a person worse' because of sex or other protected trait." *Muldrow v. City of St. Louis*, 601 U.S. 346, 353 (2024) (citation modified) (quoting *Bostock v. Clayton Cnty.*, 590 U.S. 644, 658 (2020)); *see Arnold v. United Airlines, Inc.*, 142 F.4th 460, 470 & n.22 (7th Cir. 2025).

The IHRA's purposes are similar to, and broader than, Title VII and the ADEA. *See Blount v. Stroud*, 904 N.E.2d 1, 6–7 (Ill. 2009). "The [IHRA], adopted in 1979, is intended to secure for all individuals in Illinois freedom from unlawful discrimination in connection with

6

employment, real estate transactions, access to financial credit, and availability of public accommodations." *Id.* at 6 (quotation omitted). "Illinois courts apply the federal Title VII framework to IHRA claims." *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016) (citing *Rabé v. United Air Lines, Inc.*, 971 F. Supp. 2d 807, 821 (N.D. Ill. 2013)); *see Taylor v. CDW Logistics, Inc.*, 2015 IL App (2d) 140282-U, ¶ 67. The parties here identify no differences between the IHRA on one hand and Title VII and the ADEA on the other affecting Offereins' claims. Accordingly, her Title VII, ADEA, and IHRA claims will be analyzed together.

Both sides reference the *McDonnell-Douglas* burden-shifting framework in their briefing, and both cite cases applying the framework. The *McDonnell-Douglas* framework, named for *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), provides one avenue by which evidence may be organized, presented, and analyzed at summary judgment (ordinarily after discovery) in employment discrimination and retaliation cases. *See generally Arnold*, 142 F.4th at 469–70; *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). Under the *McDonnell-Douglas* framework:

> [T]he plaintiff first must make out a prima facie case of discrimination by demonstrating that (1) she is a member of the protected class . . . ; (2) she performed her job to her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) one or more similarly situated individuals outside her protected class received better treatment.

*Arnold*, 142 F.4th at 469–70 (citing *Brooks v. Avancez*, 39 F.4th 424, 434 (7th Cir. 2022)). If the plaintiff makes out a prima facie case, the burden shifts at step two to the employer to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 470 (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020)). Last, the third *McDonnell-Douglas* step shifts the burden back to the plaintiff to "demonstrate that the defendant's proffered reason is pretextual." *Id.* (quotation omitted).

Discover argues that Offereins has "pleaded herself out of court" because two of the male executives referenced in her complaint are not similarly situated to her. Discover relies for

7

support on cases applying the *McDonnell-Douglas* framework and considering proposed comparators who were similarly situated to the plaintiff. *See* Mem. Supp. Mot. to Dismiss 10–12, Dkt. No. 22. These arguments fail first because they do not mention the executive comparators in ¶ 88 of the complaint and second because Discover fails meaningfully to engage with the federal notice pleading standard. *See id.* It is unnecessary to compare and contrast Offereins with the male executives mentioned in her complaint at the pleading stage because even the more demanding pleading requirements under *Iqbal* and *Twombly* do not require a plaintiff to identify specific comparators in a complaint. *See Hess v. Garcia*, 72 F.4th 753, 761 (7th Cir. 2023) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 748 n.3 (7th Cir. 2012)); *see generally Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–13 (2002) (explaining that a plaintiff need not plead a prima facie case in her complaint).

"A plaintiff need not allege all of the elements of a prima facie case of discrimination." *Parker v. Ill. Hum. Rts. Comm'n*, 2013 WL 5799125, at *4 (N.D. Ill. Oct. 25, 2013) (Gottschall, J.) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). Instead, "a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics" at the pleading stage. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021)). By way of illustration, the plaintiff in *Kaminski* pleaded in her complaint at "a high level of generality" that her former employer terminated her because of her age, sex, and national origin. *Id.* Quoting its decision in *Doe v. Columbia College Chicago*, 933 F.3d 849, 855 (7th Cir. 2019), the Seventh Circuit explained that such high-level allegations do not, without more, cross the plausibility threshold: "a plaintiff asserting a discrimination claim 'cannot rely on . . . generalized allegations alone, however, but must combine them with facts particular to his case to survive a motion to dismiss.'" *Id.*; *see Kaminski*, 23 F.4th at 776–77; *Parker*, 2013 WL 5799125, at *4.

Offereins' complaint goes beyond the formulaic recitation of the elements of a discrimination claim held to be insufficient in cases like *Kaminski*. Offereins alleges that Discover singled her out and disciplined her more harshly than younger men who bore more

8

responsibility for the card misclassification matter. *See* Compl. ¶¶ 51–89. Case-specific facts are alleged that, when viewed favorably to Offereins, tie Discover's disparate treatment to her sex. Specifically, Offereins plausibly pleads that Discover viewed her as a convenient scapegoat because, as a woman who had reached retirement age, Discover believed that it was considerably harder for her to "fight back" than it would have been for her younger, male colleagues. Compl. ¶ 71. Nor do, as Discover contends, the complaint's allegations that Discover praised Offereins' accomplishments as a pathbreaking businesswoman when she retired render an inference of discrimination implausible. *See* Compl. ¶¶ 33–34. Viewed favorably to Offereins, these allegations modestly bolster her discrimination claims inasmuch as they can be viewed as Discover's tacit acknowledgment of the hurdles women in the finance industry continue to face. *See* Compl. ¶¶ 33–35. Considering the complaint's allegations in their totality, Offereins states plausible claims for intentional discrimination made actionable by Title VII and the IHRA.

**B. Age Discrimination Claim: Retirement Eligibility as Proxy for Age**

Citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), Discover argues that the complaint fails to state a claim of age discrimination because Offereins relies on her retirement status as a proxy for prohibited age discrimination. Mem. Supp. Mot. to Dismiss 12–13, Dkt. No. 22. "Congress enacted the ADEA in 1967 to 'promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; and to help employers and workers find ways of meeting problems arising from the impact of age on employment.'" *Carson v. Lake Cnty., Ind.*, 865 F.3d 526, 532 (7th Cir. 2017) (citation modified) (quoting 29 U.S.C. § 621(b)). The ADEA's anti-discrimination provision reads:

> It shall be unlawful for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or

> otherwise adversely affect his status as an employee, because of such individual's age; or
>
> (3) to reduce the wage rate of any employee in order to comply with this chapter.

29 U.S.C. § 623(a).

Discover quotes the following passage from the Supreme Court's decision in *Hazen Paper*: "When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." 507 U.S. at 611. The *Hazen Paper* Court made clear, however, that "typically" means just what it says. *See id.* at 612–13. "We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination. Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent, but in the sense that the employer may suppose a correlation between the two factors and act accordingly." *Id.* (citation modified). The Court subsequently confirmed in *Kentucky Retirement System v. E.E.O.C.*, 554 U.S. 135, 142 (2008), that "*Hazen Paper* indicated that discrimination on the basis of pension status could sometimes be unlawful under the ADEA, in particular where pension status served as a proxy for age." *Id.* (internal quotation omitted).

Offereins alleges discrimination based on the fact that she had retired, and that Discover used this as a proxy for her age. Neither party cites a case in which the employer allegedly used the fact that an employee had retired (as contrasted with being eligible to retire) as a proxy for age discrimination. *See* Mem. Supp. Mot. to Dismiss 12–13; Mem. Opp'n Mot. to Dismiss 7–9, Dkt. No. 30. Such cases appear to be uncommon. The Seventh Circuit has held that claims of age "discrimination based on an economic factor closely correlated with age" is actionable and "should be examined on a case-by-case basis." *Wheeldon v. Monon Corp.*, 946 F.2d 533, 536 (7th Cir. 1991); *see, e.g.*, *Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2000) (summary judgment opinion). In view of the fact-intensive inquiry required, the parties' failure

10

to cite pertinent authority, and the close correlation between retirement and age, the court declines to dismiss plaintiff's age discrimination claims at the pleading stage before a complete factual record is developed through discovery. *Cf. Kahler v. Peters*, 2007 WL 551612, at *6 (D. Minn. Feb. 21, 2007).

### C. Equal Pay Act Claim

Discover raises two arguments in support of dismissing the complaint's EPA claim. With specified exceptions, the EPA forbids a covered employer to:

> discriminate, within any establishment . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

29 U.S.C.§ 206(d); *see generally Varner v. Ill. State Univ.*, 226 F.3d 927, 932 (7th Cir. 2000) (discussing exceptions).

An EPA plaintiff bears the initial burden to "show that an employer pays different wages to employees of opposite sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974) (internal quotations omitted). Once the plaintiff makes that showing, "the burden shifts to the employer to show that the differential is justified under one of the [EPA's] four exceptions."[1] *Id.* at 196; *accord Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 976 (7th Cir. 2000).

Discover first argues that the discretionary incentive compensation decisions at issue here do not constitute payment of wages as the EPA uses that phrase. 29 U.S.C. § 206(d). Discover cites no case construing the EPA in this cramped manner. *See* Mem. Supp. Mot. to Dismiss 7–9. For support, Discover relies on the broad pronouncement in *Corning Glass* that Congress

---

1. The EPA's four exceptions preclude liability "where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

11

adopted the EPA predicated on the principle that "equal work will be rewarded by equal wages." *See id.*; *see also Corning Glass*, 417 U.S. at 195. The preceding sentence of the *Corning Glass* opinion speaks in broader terms, however:

> Congress' purpose in enacting the Equal Pay Act was to remedy what was perceived to be a serious and endemic problem of employment discrimination in private industry—the fact that the wage structure of "many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same."

*Corning Glass*, 417 U.S. at 195.

Consistent with the EPA's "broad remedial purpose," *Ende v. Board of Regents of Regency Universities*, 757 F.2d 176, 183 (7th Cir. 1985), the EPA's implementing regulations define "wages" in the following manner:

> Under the EPA, the term "wages" generally includes all payments made to [or on behalf of] an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations, use of company car, gasoline allowance, or some other name. Fringe benefits are deemed to be remuneration for employment.

29 C.F.R. § 1620.10; *see id.* (further defining the term "wages"). The next section of the regulations adds, " 'Fringe benefits' includes, *e.g.*, such terms as medical, hospital, accident, life insurance and retirement benefits; profit sharing and bonus plans; leave; and other such concepts." 29 C.F.R. § 1620.11(a).

The complaint here alleges that more than sixty percent of Offereins' compensation came from incentives and bonuses. Compl. ¶ 80. It is reasonable to infer that discretionary incentives comprised a similar proportion of the compensation paid to male Discover executives listed in the complaint. *See* Compl. ¶¶ 81–89. Under the EPA's implementing regulations, which accord with the text and purpose of the statute, the incentive compensation decisions listed in the complaint fall within the EPA's definition of payment of wages. 29 U.S.C. § 206(d)(1).

12

Discover's second argument is that Offereins has not pleaded a plausible claim that she and the four male executives named in her complaint performed sufficiently similar work to state an EPA claim. In making this argument, Discover points to allegations in the complaint to the effect in which Offereins differentiates her role and power to address the misclassification matter from that of the company's CEO and Capozzi, who is alleged to have had the power, by dint of his title and area of responsibility, to address the misclassification issue. *See* Compl. ¶¶ 81–89. Discover says that these allegations show that Offereins and the male executives were not performing substantially similar work. *See* Mem. Supp. Mot. to Dismiss 8–9.

At summary judgment and at trial, an EPA "plaintiff must establish that the positions [of her and her comparators] entail substantially equal tasks, performed under similar conditions. (The Act just says "equal," but . . . 'equal' does not mean 'identical'; otherwise the employer could defeat an Equal Pay Act suit by adding an inconsequential and pointless chore to one of the jobs." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 923 (7th Cir. 2000). Neither party has engaged with this standard as it pertains to the complaint here. Rather, they focus on the relative culpability of Discover executives for the card certification matter. As Discover has framed it, its arguments turn the complaint's allegations on their head and invite the court to ignore the rule that the complaint must be construed in the light most favorable to the plaintiff on a Rule 12(b)(6) motion. *See Iqbal*, *supra*, 556 U.S. at 678. Taken favorably to Offereins in context, the point being made in the complaint is that Discover regarded Offereins and the male executives as substantially similar for purposes of assessing their involvement in, and culpability for, the misclassification matter, yet Discover withheld substantively more incentive compensation from Offereins than it did its CEO, Capozzi, and the two other male executives it disciplined. *See* Compl. ¶¶ 81–89. At the pleading stage, that is enough to state an EPA claim.

**D. Breach of Contract Claim**

Count I of the complaint asserts a claim that Discover breached the covenant of good faith and fair dealing. *See* Compl. ¶¶ 90–102. Specifically, Offereins pleads that she "had a

13

reasonable expectation at the time she executed the Plan and Award Certificates that (1) the Company would not make a determination that she engaged in 'willful or reckless violations of the Company's risk policies' in bad faith, and (2) that the Company would not decide to cancel her RSU and PSU awards in bad faith." Compl. ¶ 99.

Discover's 2014 compensation plan contains a choice of law clause in favor of Delaware law. *See* Mem. Supp. Mot. to Dismiss 13–15. "Illinois courts respect a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 638 (7th Cir. 2021) (citation modified). Offereins does not disagree that Delaware's law governs her breach of contract claim. *See* Resp. to Mot. to Dismiss 12–15, Dkt. No. 30. In the absence of any argument contesting choice of law, the court applies Delaware law to Offereins' breach of contract claim.

"Under Delaware law, a breach of contract claim comprises three elements: (1) the existence of a contract; (2) a breach of an obligation imposed by that contract; and (3) resultant damages." *Walker v. FRP Invs. GP, LLC*, 336 A.3d 542, 562 (Del. Ch. 2025) (quoting *Wenske v. Blue Bell Creameries, Inc.*, 2018 WL 3337531, at *9 (Del. Ch. July 6, 2018)). In 2018, the Seventh Circuit summarized Delaware law concerning the implied covenant of good faith and fair dealing as follows:

> Delaware recognizes a claim for the breach of the implied covenant of good faith and fair dealing in limited circumstances. The implied covenant requires "'a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits' of the bargain." *Dunlap v. State Farm Fire & Cas. Ins. Co.*, 878 A.2d 434, 442 (Del. 2005), (quoting *Wilgus v. Salt Pond Inv. Co.*, 498 A.2d 151, 159 (Del. Ch. 1985). The covenant implies terms in an agreement to fill gaps or to account for unanticipated developments. *Id.*
>
> The implied covenant cannot modify the express language of the parties' agreement, so a party generally may not base a claim of a breach of the implied covenant on conduct authorized by the terms of an agreement. *Id.* "Under Delaware law, a court confronting an implied covenant claim asks whether it is clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe

14

> the act later complained of as a breach of the implied covenant of good faith—had they thought to negotiate with respect to that matter." *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 418 (Del. 2013), overruled on other grounds by *Winshall v. Viacom Int'l Inc.*, 76 A.3d 808 (Del. 2013). Finding a breach of the implied covenant "should be a rare and fact-intensive exercise, governed solely by issues of compelling fairness." *Dunlap*, 878 A.2d at 442 (citation modified).

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 355–56 (7th Cir. 2015).

Discover argues that it owed Offereins no duty of good faith and fair dealing because the RSU and PSU certificates expressly authorized Discover to forfeit all or part of Offereins' incentive compensation upon finding, as it did, that she had violated Discover's Risk Review rules. This argument rests on a mischaracterization of Offereins' breach of contract claim. There is no dispute that Discover had the contractual authorization to withhold incentive compensation after making certain factual findings. *See* Compl. ¶¶ 43–50.

The essence of Offereins' breach of contract claim consists of her challenge to how Discover wielded its contractual discretion to make findings about, and mete out consequences to, its executives. As the Delaware Supreme Court recently reiterated, "When a contract confers discretion on one party, the implied covenant [of good faith and fair dealing] requires that the discretion be used reasonably and in good faith." *Terrell v. Kiromic Biopharma, Inc.*, 297 A.3d 610, 620 n.37 (Del. 2023) (citation modified). The duty extends beyond decisions about consequences: "[I]f one party is given discretion if in determining whether a condition in fact has occurred, then that party must use good faith in making the determination." *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1116 (Del. 2022) (quoting *Wilmington Leasing, Inc. v. Parrish Leasing Co., L.P.*, 1996 WL 560190, at *2 (Del. Ch. Sept. 25, 1996) (other citations omitted). Indeed, the Delaware Supreme Court has stated that contractual language "vesting . . . a Board [of directors] with discretion does not relieve the Board of its obligation to use that discretion consistently with the implied covenant of good faith and fair dealing." *Oxbow Carbon & Minerals Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC*, 202 A.3d 482, 503–04 & n.92 (Del. 2019) (collecting citations).

15

Applying the foregoing rules and principles, the Delaware Court of Chancery held in *Smith v. Scott* that a fired executive's complaint stated a claim against his former employers for breach of the duty of good faith and fair dealing. *Smith v. Scott*, 2021 WL 1592463, at *7–8 (Del. Ch. Apr. 23, 2021). The plaintiff in *Smith* alleged plausibly that his former employers "purport[ed] to fire [the plaintiff] for cause when, in fact, their sole motivation was to take his Vested Interests without compensation." *Smith*, 2021 WL 1592463, at *7 (citing and discussing *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *6–7 (Del. Ch. May 29, 2020)). Offereins' complaint here states a stronger claim, for it pleads plausibly that Discover withheld more than $7 million in compensation from Offereins for reasons that were not only in bad faith but were also illegal under federal and state anti-discrimination laws. Specifically, Offereins alleges that Discover "perverted" its contractual discretion to decide because of her age, sex, and retirement status rather than for any legitimate reason related to the subject matter of the incentive compensation plan. Compl. ¶ 71. Taking these facts in her favor, Offereins pleads that Discover had the discretion to declare forfeit all or a portion of the unvested incentive compensation for younger, male executives, but Discover chose to punish Offereins with the most severe financial consequences, even though her comparators bore significantly greater responsibility for the credit card misclassification matter at issue in Project Simple. *See* Compl. ¶¶ 81–89. As in *Smith*, the allegations in the complaint here state a plausible claim that Discover breached the duty of good faith and fair dealing under Delaware law. *See also SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559, at *9–10 (Del. Ch. Aug. 25, 2021); *Sheehan*, 2020 WL 2838575, at *9–10.

## Iv. Conclusion

For the reasons stated, defendant Discover Financial Services' motion to dismiss the complaint for failure to state a claim is denied.

Date: September 22, 2025     /s/ Joan B. Gottschall
                              United States District Judge

16